UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                               Criminal No. 12-173 (JNE/JGL)
                                                  Civil No. 16-2597 (JNE)
MICHAEL SCOTT CANFIELD,        ORDER

    Defendant.

Defendant Michael Scott Canfield filed a *pro se* motion under 28 U.S.C. § 2255 [Dkt. No. 37.] seeking to vacate his current sentence. Defendant argues his sentence is in violation of the rule of law established by *Johnson v. United States*, 135 S. Ct. 2551 (2015), as applied in *Mathis v. United States*, 136 S. Ct. 2243 (2016). This is Defendant's first § 2255 motion.

On September 28, 2012, Defendant pled guilty to the crime of felon in possession of a firearm, in violation of the Armed Career Criminal Act of 1984, 18 U.S.C. §§ 922(g)(1), 924(e) ("ACCA"). This crime carries a maximum sentence of 10 years' imprisonment, § 924(a)(2), but the ACCA imposes a mandatory minimum sentence of 15 years to a maximum of life in prison if the violator has three or more earlier convictions for a "serious drug offense" or "violent felony," *id.* at (e)(1). On March 20, 2013, Defendant was sentenced to 188 months in federal custody, which was allowed under the ACCA because Defendant had five previous qualifying (at the time) violent felony convictions: two first-degree burglaries, one second-degree burglary, and two fleeing-from-police convictions (all under Minnesota law).

Defendant implicitly raises the challenge that his "sentence was imposed in violation of the Constitution or laws of the United States," "that the sentence was in excess of the maximum authorized by law," and that the sentence "is otherwise subject to collateral attack." § 2255(a).

All of these are cognizable grounds for a § 2255 motion. *See id.* Defendant's challenge must also allege violations of law that involve a "fundamental defect which inherently results in a complete miscarriage of justice." *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 346 (1974). It goes without saying that Defendant's challenge involves a fundamental defect which, if successful, would require his sentence to be reduced by several years.

  I.  Timeliness of Motion

As a preliminary procedural hurdle, Defendant must have filed his motion within one year of the date on which "the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable." § 2255(f)(3). Defendant asserts the right underlying his motion was established by *Johnson*. The Supreme Court has ruled that *Johnson* is to be applied retroactively. *See Welch v. United States*, 136 S. Ct. 1257 (2016). Therefore, Defendant must have filed his motion within one year of *Johnson*'s deciding on June 26, 2015. For the reasons explained below, the Court finds that the Defendant's motion was timely.

The Court's electronic filing system shows that Defendant's motion was filed August 1, 2016, past the one-year anniversary of *Johnson*. But that does not end the inquiry; as Defendant points out, under the prison mailbox rule, his motion is counted as filed on the day it was delivered to prison authorities. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). To take advantage of this rule, Defendant must have "actually deposited his legal papers" by his deadline and "at some point attest[ed] to that fact in an affidavit or notarized statement." *Grady v. United States*, 269 F.3d 913, 918 (8th Cir. 2001) (requiring that prisoners comply with Fed. R. App. P. 4(c) to take advantage of the prison mailbox rule). Defendant bears the burden of "proving his entitlement to benefit from the [prison mailbox rule]." *Id.* at 916-17.

The Government argues that Defendant's motion is untimely and that the prison mailbox rule should not be applied. It points to the fact that Defendant originally sought information from the Clerk of Court regarding an extension of time to file his § 2255 motion. [*See* Dkt. No. 35.] The Clerk of Court wrote back to Defendant advising him that he could "briefly set[] forth the basis for [his] claims" in motion papers and seek an extension for more comprehensive briefing. [Dkt. No. 36.] Defendant states this is what he did (sans seeking an extension): that he delivered his motion to prison authorities on June 23, 2016, but that the motion was returned to him without explanation on July 24, 2016. [Dkt. No. 37, Ex. 1; 40.] Defendant declares, under penalty of perjury, that he resubmitted the same motion papers soon after they were returned to him. [*See* Dkt. No. 37, Ex. 1.] The last page of the filed motion also includes a declaration that it was placed in the prison mailing system on June 23, 2016, signed by Defendant on the same date. [*See* Dkt. No. 37.]

Defendant appears to have met his burden of proving he filed his motion within the one-year limitation period. Absent evidence to the contrary, courts assume a prisoner delivered a filing to prison authorities on the date the prisoner signed it. *See, e.g.*, *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014). A prisoner's declaration that a filing was delivered to prison authorities on a particular date is evidence that delivery actually occurred and also a requirement under Fed. R. App. P. 4(c)(1). Defendant's motion was signed June 23, 2016, and he provided two sworn declarations that he provided his motion to authorities on that date. The Government thus had the burden to prove the motion was delivered on a different date, which could have been shown by evidence such as prison logs and records. *Jeffries*, 748 F.3d at 1314.

The Government has not provided any extrinsic evidence showing Defendant did not file his motion papers with prison authorities on June 23, 2016. Instead, the Government argues that

Defendant's story seems "unlikely" given the correspondence with the Clerk of Court, the fact that the Defendant did not include his original mailing envelope as evidence in support of his declarations, and since the papers cite *Mathis*, which was decided the same day.

These circumstantial arguments are not enough to carry the Government's burden to prove the motion was delivered on a different date than the one backed by Defendant's signature and declarations. Defendant's conversation with the Clerk of Court, and the documents evidencing it, more support than detract from Defendant's declaration that he delivered the motion on June 23, 2016; the Clerk recommended Defendant write a brief motion, which is just what Defendant did. Defendants are also not required to submit original envelopes to support their declarations. Finally, it is quite possible that a Defendant whose convictions might be implicated by *Johnson* and subsequent holdings would be keenly aware of newly-published cases like *Mathis*. It is plausible Defendant read *Mathis* and briefly incorporated it in his motion papers before filing on the same day the opinion was issued—especially since *Mathis* is so applicable to Defendant's sentence. Therefore, Defendant's motion is timely.

The Government further argues that the lack of extrinsic evidence about Defendant's filing "would probably require an evidentiary hearing." [Dkt. No. 39.] Without deciding this question, the Court notes that an evidentiary hearing is not required if Defendant is not entitled to relief on the motion. *See Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief."); *see also* 18 U.S.C. § 2255(b). Because Defendant's motion fails on its merits, the Government is correct that an evidentiary hearing is "unnecessary."

II.   Minnesota Burglary After *McArthur*

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that—"

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). In *Johnson*, the Supreme Court held that the italicized half of sub-definition (ii), called the "residual clause," is unconstitutionally vague. 135 S. Ct. 2551, 2557-62 (2015). Therefore, in order for Defendant's sentence to stand, his prior convictions must fall within sub-definition (i) or the earlier half of sub-definition (ii), the "enumerated offense clause."

Plainly, Defendant's fleeing-the-police convictions are outside the enumerated offense clause, and Defendant's burglary convictions do not include force as an element.[1] Therefore, Defendant's sentence hinges on whether his convictions qualify as "burglary" under sub-definition (i) of "violent felony." This is the foundation of Defendant's motion before the Court, and he asserts that at least one or all of his Minnesota burglary convictions do not fall within the enumerated offense clause.

---

[1] Minn. Stat. § 609.582 does not expressly include any burglary elements that involve physical force (its use, attempted use, or threatened use). However, first-degree burglary under the statute provides for an alternative, additional element: that "the burglar assaults a person within the building." *See id.* at subd. 1(c). This element may incorporate an element involving physical force. *See, e.g., United States v. Headbird*, ___ F.3d ___, No. 15-3718, 2016 WL 4191186 (8th Cir. Aug. 9, 2016); *United States v. Lindsey*, ___ F.3d ___, No. 15-2447, 2016 WL 3523829 (8th Cir. June 28, 2016). The Court need not resolve this question, though, since none of Defendant's prior burglary convictions involve assault. Therefore, at least with respect to Defendant's burglary convictions, none have an element involving physical force.

5

In order for a burglary conviction to fall within the enumerated offense clause of the definition of "violent felony," the crime must comport with the generic concept of burglary. *See Taylor v. United States,* 495 U.S. 575, 598 (1990). "To determine whether a prior conviction is for generic burglary . . . courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction *sufficiently match* the *elements* of generic burglary, while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (emphasis added). "The elements of a crime are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *United States v. Headbird*, --- F.3d ---, No. 15-3718, 2016 WL 4191186, at *2 (8th Cir. Aug. 9, 2016). Generic burglary's elements are: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *See Mathis*, 136 S. Ct. at 2248 (citing *Taylor*, 495 U.S. at 598). A burglary statute's elements must be the same-as or narrower-than this generic concept, but "minor variations" are allowed. *Taylor*, 495 U.S. at 599.

Some statutes may include additional or alternative language to the elements of generic burglary. If the statute's text lists alternative *elements*, it in effect defines multiple crimes—and is said to be divisible. *See Mathis*, 136 S. Ct. at 2249. For example, the statute might list as a requirement "lawful entry or unlawful entry." *See id.* This would be an example of alternative entry elements, creating separate crimes. However, if the statute's text lists alternative *means* of satisfying a single element, then multiple alternative crimes are not created. *See id.* at 2250. For example, the statute might define the locational element of burglary to include buildings, structures, vehicles, etc. *See id.* These alternatives would qualify as alternative means of satisfying the locational element of burglary. *See id.*

6

If a court finds that the statute lists alternative elements, then the court applies the "modified categorical approach." *See id.* at 2249. Under this approach, the court looks to the prior convictions and determines what crimes the defendant was convicted of, based on what elements underlie his conviction. *Id.* But if the statute lists alternative means of satisfying the elements of burglary, and such means are broader than means within the generic conception of burglary, then "in no uncertain terms" the crime "cannot qualify as an ACCA predicate" because it is broader than generic burglary. *Id.* at 2251.

Both the Government and Defendant agree that Minnesota's third-degree burglary statute (Minn. Stat. § 609.582, subd. 3 (2016)) sufficiently matches the elements of generic burglary. However, during the pendency of the Court's consideration of Defendant's motion, the Eighth Circuit has clarified that Minnesota's third-degree burglary statute has alternative elements, so convictions of the statute must be analyzed using the modified categorical approach. *See United States v. McArthur*, --- F.3d ---, No. 14-3335, 2016 WL 4698285, at *6-8 (8th Cir. Sept. 8, 2016). Defendant's motion involves, however, first- and second-degree burglary.

The parties disagree as to whether Minnesota's first- and second-degree burglary statutes are sufficiently similar to generic burglary. The Eighth Circuit has not spoken on this issue, but other United States District Court Judges for the District of Minnesota have held, pre-*McArthur*, that the statutes sufficiently match generic burglary. *See, e.g.*, *Leroy Crandall v. United States*, No. 02-190, 2016 WL 3512137, at *1 (D. Minn. June 22, 2016) (noting that the first- and second-degree burglary statutes "are even closer to the so-called 'generic' definition of burglary" than the third-degree statute); *United States v. Westberg*, No. 04-84, 2016 WL 953227, at *2 (D. Minn. Mar. 14, 2016) ("Minnesota has defined Second Degree Burglary consistent [with] the

7

Supreme Court's definition."). An initial question, then, is whether the first- and second-degree burglary statutes are affected by *McArthur*.

In *McArthur*, the Eighth Circuit held that Minnesota's third-degree burglary statute set forth alternative elements—and that one of the alternatives was broader than generic burglary. *See* 2016 WL 4698285, at *6. Third-degree burglary's alternative elements require that a person enter without consent either (A) with intent to commit crime, or (B) without intent to commit crime at the time of entry, but committing a crime within after entry. *See id.* at *7. Alternative (B) does not specifically require that the violator intend to commit a crime at the moment of entry. Therefore, the Court held that alternative element created a version of burglary that is broader than generic burglary. *See id.* at *8.

Minnesota's first- and second-degree burglary statutes include the same alternative language discussed in *McArthur*. Thus, Defendant's convictions under these statutes must be evaluated using the modified categorical approach. This is short work where, as here, the Defendant's convictions do not implicate alternative (B); rather, each of Defendant's convictions rest on alternative (A). This is because for each burglary, Defendant entered a building without consent and with intent to commit a crime.

All three of Defendant's burglaries were residential break-ins with intent to steal property therein. For example, Defendant was caught with stolen property fleeing the scene of his 1996 second-degree burglary. Defendant was arrested for his 2007 first-degree burglary after firearms stolen during the burglary were found in his home. Finally, Defendant and an accomplice were caught by a homeowner during the 2007 first-degree burglary. Although defendant did not leave with property after this last burglary—because he fled as soon as he was confronted—theft or related crime was the clear design. Therefore, Defendant's past burglary convictions rest on the

alternative requiring intent to commit a crime at the moment of entry. This alternative sufficiently matches generic burglary. Thus, at least on this basis, Defendant's prior burglary convictions are violent felonies within the meaning of the ACCA.

   III.   Categorical Approach Analysis of Minnesota Burglary

While Minnesota's first- and second-degree burglary statutes mirror the language of the third-degree statute in some ways, they differ in three substantive respects.[2] Given the holdings in *Taylor*, *Johnson*, *Mathis*, and *McArthur*, these differences require the Court to analyze each statute under the categorical approach. The Court finds that Minnesota's first- and second-degree burglary statutes have alternative elements in addition to those identified in *McArthur*, but that each alternative is within the concept of generic burglary.

First, while all three statutes require entry into a "building," the first- and second-degree burglary statutes require, in some cases, entry into specific kinds of buildings. *Compare* Minn. Stat. § 609.582, subd. 3, *with id.* at subd. 1(a) (requiring that the building is an occupied dwelling at the time of the burglary), *and* subd. 2(a)(1)-(3), (b) (requiring, among other things, that the building is an unoccupied dwelling, banking business, pharmacy, government building, religious establishment, historic property, or school). Defendant argues, relying on *Mathis*, that this difference renders Minnesota's first- and second-degree burglary statutes broader than generic burglary. The Court disagrees.

In *Mathis*, the definition of "building" was of critical importance since Iowa law defined the term as "any building, structure, [or] land, water, or air vehicle." 136 S. Ct. 2243, 2250

---

[2] The Court has reviewed legislative changes made to Minnesota's burglary statutes since April 16, 1996, the date on which Defendant committed his first burglary. The changes made to the burglary statutes include numerical updates, clarifications regarding accomplice culpability, and additional alternative locational elements (all buildings). *Compare* Minn. Stat. § 609.582 (1995), *with* Minn. Stat. § 609.852 (1998), *and* Minn. Stat. § 609.582 (2007).

(2016) (citing Iowa Code § 702.12 (2013)). This definition altered the crime of burglary under Iowa law such that the means of satisfying the locational element of burglary were broader than and not coextensive with the locational element of generic burglary. *See id.* Minnesota law, however, defines "building" as "a structure suitable for affording shelter for human beings including any appurtenant or connected structure." Minn. Stat. § 609.581, subd. 2 (2016); *see also id.* at subd. 3, 5-8 (defining other kinds of buildings in similar terms). Therefore, contrary to Defendant's arguments, Minnesota's burglary statutes do not suffer from the same defect as Iowa's. Minnesota's first- and second-degree burglary statutes are narrower than generic burglary with regard to the locational element.[3]

Second, the first- and second-degree burglary statutes provide for alternative, additional elements requiring use of certain objects during the burglary. Neither statute requires this object element be satisfied, but instead offers it as an alternative to proving that, for example, that the burglarized building was specifically a dwelling (with or without a person in it). *See* Minn. Stat. § 609.582, subd. 1-2 (2016). Thus, first-degree burglary can be committed if, in addition to burglary's generic elements, "the burglar possesses . . . *a dangerous weapon . . . or an explosive*." *Id.* at subd. 1(b) (emphasis added). Second-degree burglary can be committed if, in addition to generic elements, "when entering or while in the building, the burglar possesses a *tool to gain access to money or property*." *Id.* at subd. 2(4) (emphasis added). The inclusion of these provisions has the effect of narrowing first- and second-degree burglary "because the conviction necessarily implies that the defendant has been found guilty of all the elements of

---

[3] The Supreme Court anticipated that state burglary statutes would differ from generic burglary by providing for degrees of culpability based on, among other things, the kind of building involved. *See Taylor v. United States*, 495 U.S. 575, 599 (1990); *see also Descamps v. United States*, 133 S. Ct. 2276, 2299 (2013) (Alito, J., dissenting) (remarking that "alternative elements or means suggest different degrees of culpability" under some state statutes).

10

generic burglary," in addition to other elements. *Taylor v. United States*, 495 U.S. 575, 599 (1990). As a result, these additional, alternative elements fall within generic burglary.

Third, first-degree burglary differs from second- and third-degree burglary by providing that it may committed if, in addition to generic elements, "the burglar assaults a person within the building or on the building's appurtenant property." § 609.582, subd. 1(c). Like the analysis regarding alternative, additional elements for the use of certain objects in the commission of a burglary, this element renders first-degree burglary narrower than generic burglary.

In summary, the three differences between Minnesota's first- and second-degree burglary statutes and the third-degree statute serve only to narrow first- and second-degree burglary from the generic concept of burglary. The differences represent alternative (and sometimes additional) elements that the prosecution must prove in order to convict the accused; they are not alternative means to accomplishing singular elements. And even if they are alternative means, these means would not fall outside of generic burglary—as was the case in *McArthur*.

The Court finds that Minnesota's first- and second-degree burglary statutes sufficiently match generic burglary—except as otherwise held in *McArthur*. Defendant's three burglary convictions all qualify as violent felonies under the ACCA's enumerated offense clause. Since the crimes qualify, the ACCA requires the Defendant receive a minimum sentence of 15 years. Defendant's sentence is for 188 months (15 years and 8 months). Therefore, Defendant's sentence stands and is unaffected by the *Johnson* decision.

IV.     Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). A court cannot issue a certificate of appealability unless the applicant has made a "substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Here, reasonable jurists would not find the rejection of Defendant's claim debatable or wrong. Thus, the Court declines to issue a certificate of appealability.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Michael Scott Canfield's Pro Se Motion to Vacate Under 28 U.S.C. § 2255 [Dkt. No. 37] is DENIED.

2. A certificate of appealability is NOT GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 15, 2016                     s/Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge